## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATY BERNAL-GUZMAN** | : | **CIVIL ACTION NO._____ GJP** |
| **FMC Carswell** | : | |
| **Fort Worth, TX** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| **c/o United States Attorneys Office** | : | |
| **615 Chestnut Street** | : | |
| **Philadelphia, PA** | : | |
| **Defendant** | : | |

## COMPLAINT

### Introduction

Plaintiff Katy Bernal-Guzman, an intersex Spanish-only speaking female, brings this claim arising out of Plaintiff's placement while a pretrial detainee onto a male housing block with a male cell mate at FDC Philadelphia for 13 days. She suffered multiple and serious sexual assaults and injuries despite her calls for help. Competent and qualified Spanish speaking employees were minimal on cell blocks housing Spanish-only speaking inmates.

Plaintiff was incorrectly designated and housed as a male based on FDC Philadelphia intake officers' bias rather than follow intake requirements for intersex inmates or other inmates falling under the protection of the Prison Rape Elimination Act ("PREA"). She had no physical examination to confirm her assertion upon intake, that she is a female, in violation of the Bureau of Prisons' own required rules and regulations regarding intersex individuals and intake ignored the requirements of the PREA.

1

Plaintiff was double celled with a violent male inmate. She was brutally raped and assaulted by her cellmate for 13 days, without security staff intervention, until another Spanish speaking inmate heard her pleas for help and alerted a guard who eventually notified medical, which confirmed her female gender. She was then immediately moved to a female block. The wrongful designation and placement on a male cell block with a male cellmate, has had serious and permanent consequences for Plaintiff, both physical and emotional.

## Parties

1.      Plaintiff Katy Bernal Guzman, ("Plaintiff") an intersex female by birth, with no male body parts, is a current resident of FMC Carswell in Fort Worth, Texas. Acts she complains of occurred in the Eastern District of Pennsylvania, but the medical and protective failures continue in her recent placements which include FCI Tallahassee, Florida and FMC Carswell, TX.

2.      Defendant is United States of America c/o United States Attorney's Office, Department of Justice for itself and, pursuant to the Federal Tort Claims Act, for injuries caused by the negligent or wrongful act or omission of any employee of the government at all times relevant to this complaint while acting within the scope of his office or employment, here the Federal Bureau of Prisons ("BOP") and United States Marshals Service federal law enforcement officers, together ("defendant or Defendant") under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the Commonwealth of Pennsylvania.

## Jurisdiction and Venue

3.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (which the defendant acknowledges that on May 25, 2025, following administrative

exhaustion, those claims become ripe and a lawsuit must be filed within 6 months). The harm is continuing and the discovery rule also applies.

4.    Venue is proper in this district because the actions complained of began and occurred in this district.

## **Factual Background**

5.    In the fall of 2022, Plaintiff, then in her 30's, in a long term relationship with a man she considers her husband and together raising a teenage child, was arrested on a Maryland state drug charge, granted bail and released. This was her first arrest.

6.    Subsequently, the federal government adopted and prosecuted that state case in the federal court for the District of Maryland.

7.    Post federal adoption of the case, on January 20, 2023, Plaintiff was arrested at her home in Maryland by federal officials and incarcerated in a Maryland jail in a cell by herself. Plaintiff is 5'7" tall and weighs approximately 180 pounds. At the time of the arrest, she was wearing a dress, high heels, hair extensions, nail polish and makeup. The arresting officers did not allow her to change out of her short dress.

8.    Federal prison policy and procedure contains specific instructions regarding intersex inmates and detainees. The Prison Rape Elimination Act is a federal law that establishes a zero tolerance standard for sexual abuse in all United States correctional facilities. It is mandated to be followed. FDC Philadelphia is a United States correctional facility for both pretrial detainees like Plaintiff and sentenced inmates.

9.    PREA became law in 2003, signed by George W. Bush. It requires the creation and implementation of national standards for preventing, detecting, and responding to sexual abuse and requires prison facilities to develop policies for the punishment of sexual abuse. In

this case the following prevention measures were violated:  screening Plaintiff for the risk of being victimized; ignoring any staffing plans to ensure adequate staffing levels and use of video monitoring;

10.     The defendant has stated it has no video of the block where Plaintiff was housed and assaulted.  The defendant also violated the ban against cross-gender examination of Plaintiff. It is believed and therefore averred that BOP employees have not been adequately trained on their responsibility in preventing, recognizing and responding to sexual abuse.

11.     It is believed and therefore averred that PREA policies and procedures as well as the law were not followed either in Maryland or Philadelphia, and were in fact violated.

12.     Upon receiving information from the pretrial detainee, or any other source, that the individual entering custody is either transgender or intersex, institution staff managing pretrial offenders must refer cases to the Transgender Executive Counsel ("TEC") for review. Any TEC recommendations concerning pretrial inmates must be coordinated with the appropriate United States Marshals Service District Office.  No record of such referral is in Plaintiff's medical file or any file available to Plaintiff.

13.     In making housing unit assignments an intersex detainee's own views with respect to her own safety must be given serious consideration.   Plaintiff was disregarded when she insisted she is female, but nevertheless double-celled with a male inmate.

14.     The defendant disclosed that on February 1, 2023, eight days after her arrest in Maryland, instead of transport by the United States Marshals, Plaintiff was transported by two employees of United Security, Inc., a government contractor, from Maryland to the FDC Philadelphia, a Federal Bureau of Prisons facility.

15.     The transport officers are believed and therefore averred to be directly supervised in the performance of their government directed duties at each end of the transport by federal government personnel, including the responsibility for accurate paperwork.

16.     At the FDC Philadelphia entrance point, Plaintiff was called a "faggot" by the admitting Federal Bureau of Prisons Corrections Officers ('COs'), and ordered to change her clothes.

17.     A male supervisor who serves as Community Supervision Services Supervisor for Research and Development had no known contact with the required TEC, or the US Marshals' designated transport company, did not investigate the accuracy of any paperwork brought to the BOP and conducted a visual search of Plaintiff, a female detainee, which is improper for a male to perform pursuant to prison regulations and the law.

18.     At that point the admitting personnel, by their crude language, made judgments about Plaintiff based upon their own bias and prejudices, and violated prison policies by not following the required procedure to ensure Plaintiff's safety.  The supervisor directed BOP personnel that she be housed with males instead of being sent to medical or single celled until required procedures could be completed.

19.     Plaintiff received no medical exam and was not strip searched as regulations require.  No female officers were present.  She told admitting COs several times in Spanish that she was a female.  She was ignored.  There was no effort to effectively determine her gender prior to her being placed on an FDC Philadelphia male cell block by COs as directed.

20.     It is believed and therefore averred Plaintiff was also not subjected to a required PREA screen as having characteristics of an inmate or detainee with a higher than normal likelihood to be a victim of sexual assault, despite the CO's offensive terminology of "faggot"

recognizing crudely that such screening was in fact necessary, and that further investigation should have been done.

21.     None of the COs giving her orders spoke Spanish.

22.     None of the COs listened, or they ignored her, when Plaintiff told them in Spanish she was a female. Plaintiff was placed on a male cell block and housed in a cell with another male.

23.     It is believed and therefore averred that said male cellmate had a known history of violence.

24.     It is believed and therefore averred that there is video of the block Plaintiff was housed on and video of her intake.  This video is believed and therefore averred to have been collected, referenced in, and contained in, any PREA investigation and/or other investigation of this matter.

25.     Defendant USA disclosed on April 1, 2025, that cell block placement determinations are generally made by R&D.  According to prison regulations TEC is supposed to be immediately consulted if an individual is admitted who is transgender or intersex or indicates same, for recommendations.  Admitting CO's  acted contra to the regulations for housing intersex inmates.

26.     From the time she arrived until nearly two weeks later, Plaintiff was daily denied safety and security from her violent cellmate on the male block and denied medical care by the COs and others; she was threatened, sexually assaulted and physically abused by her cellmate, a violent male inmate, at all hours of the day and night, without any CO intervening.  She was in constant fear.  No CO understood her pleas for help, and/or ignored her pleas for help.  No CO responded to help her.

27.     All COs on shift during the relevant time frame denied Plaintiff safety and security as she was a female on a male floor housed with a male and no CO on any shift intervened to move her to the female cell block.

28.     Federal prison rules forbid sexual contact between inmates or detainees and require it to be reported by staff who are aware of it.  It is believed and therefore averred that COs and staff were aware of the assaults on Plaintiff, but there are no known reports.  The attack on Plaintiff, it is believed and therefore averred, is one of several recent attacks on inmates at FDC which shows the negligence of BOP by lack of security staffing to prevent such attacks.

29.     It is believed and therefore averred that no reports were made by prison staff at FDC Philadelphia who knew, or had reason to know, of such assaults against Plaintiff.

30.     Plaintiff's cellmate promised to kill her on Valentine's Day, February 14, after he once again fulfilled his sexual fantasies.

31.     In total Plaintiff was celled approximately 288 hours with that male inmate.

32.     Plaintiff was terrorized, sexually assaulted multiple times, raped, molested, beaten, and had her head battered against the metal bunk bed by her male cellmate.  The edge of the metal bunk caused a large wound to open on her head.  The sexual assaults were severe and repetitive, and caused direct contact with Plaintiff's genitals, breasts and mouth causing physical pain.

33.     Plaintiff cried and asked for help in Spanish multiple times.  There was no response from corrections officers.

34.     Late on February 13th or early February 14th another inmate believed to be recently housed near Plaintiff heard her crying.  That inmate spoke Spanish and asked what was wrong, she told him.

35.    That inmate called out for a CO and explained in English what was happening, after some resistance a supervisor was summoned who eventually decided to take Plaintiff to medical.

36.    A physical exam was conducted by medical for the purpose of determining Plaintiff's gender.  That exam determined that Plaintiff was indeed female as she had said multiple times.

37.    The medical record entry for that exam notes "hermaphrodite" a long discarded stigmatizing term formerly used to describe an intersex individual, but the doctor specifically confirmed Plaintiff was female.

38.    A rape kit was not completed at any time after the assault.  It is believed and therefore averred that no sexual assault protocol was followed as required by PREA and prison regulations.

39.    Testing for STDs was not performed, which has now endangered her health.

40.    Plaintiff's head wound from the cellmate's beating, was not properly treated and it became infected.

41.    Plaintiff was immediately relocated to the female unit of FDC Philadelphia after the physical exam by medical for the purpose of confirming gender.

42.    The head injury inflicted by the male inmate continued to become more infected as medical did not provide adequate treatment.  The wound formed a large keloid-type erosion of her scalp and appears to contain pus.  She had constant headaches and other symptoms of infection which continued over time.

43.    The Federal Bureau of Prisons pursuant to PREA requires allegations of sexual assault and rape as described above be reported centrally and investigated immediately.

44.     Plaintiff was interviewed by investigators at some unknown time and she cooperated.

45.     It is believed and therefore averred that the PREA procedure was not followed. As late as the summer of 2024 it was relayed to counsel that no PREA investigation was complete because Plaintiff had not filed an SF 95 Federal Tort Claims Act form.  On the contrary no "form" is required.  Plaintiff gave notice and cooperated pursuant to PREA, she also timely reported to the prison what had happened to her, both verbally and in writing through the prison grievance system.

46.     She authorized counsel to make written notifications to the US Marshal and the Bureau of Prisons under the Tort Claims Act.  To satisfy the defendant, however a claim "form," SF-95 has since been timely filed for both Federal Bureau of Prisons and United States Marshals Service and served upon the appropriate parties including the US Attorney and Attorney General. Those claims were denied.

47.     Sometime after Plaintiff was moved to the female block, at least three BOP prison officials presented a document to her written in English, which was read to her by a prison employee in the kitchen who spoke some Spanish.  It cannot be fairly said she understood the writing or the purpose of the document. She was then asked by the BOP officials to sign the document and assured it was OK to sign it.  She did not sign.

48.     Plaintiff, who did not attend high school, believes and therefore avers this was a document relating to what had occurred to her as set forth herein, but the broken Spanish spoken by the prison employee and the words conveyed were not well understood or comprehended.

49.     After Plaintiff's head wound did not heal and she suffered headaches and fever, she was eventually sent to outside medical where she was given antibiotics and told to return for

follow-up.  She was not taken for follow-up.  That injury was still not resolved when at FCI Tallahassee which had not sent her to outside medical for the injury.  Plaintiff has since been moved to the Federal Medical Center Carswell in Fort Worth, Texas.

50.    The US Marshals' prison transport log to outside medical in Philadelphia, when she finally was sent, listed Plaintiff *as a male inmate*, which transport was months after FDC Philadelphia medical confirmed Plaintiff is a female.  "Male inmate" is also reflected in outside medical records derived from transport documentation by FDC Philadelphia.  Outside medical also did not speak Spanish and used an online translator to try to communicate.

51.    No BOP personnel or the US Marshals has ever contacted outside medical to correct the error.  Outside medical, contracted for prison care, would not correct the record for Plaintiff's representative, it must be authorized by the government.

52.    Upon initial admission to FDC Philadelphia, and later upon admission to the female unit, Plaintiff did not receive appropriate medical care for intersex detainees in that, for example, hormones necessary to her health and survival such as cortisol and aldosterone, were not evaluated or administered for a number of weeks, and even then the hormones given were improperly switched to estradiol pills, an estrogen hormone, which is not an appropriate therapy for a number of reasons.  This continued to be a problem at FCI Tallahassee and FMC Carswell.

53.    Estradiol pills carry the inherent risk of blood clots, high blood pressure, high cholesterol, migraine headaches, and diabetes among other serious health effects, some or all of which have manifested in Plaintiff when those issues had not previously been experienced.

54.    Plaintiff has developed migraines and serious, seemingly uncontrolled, diabetes since receiving estradiol, at great risk to her health which is continuing.

55.     After several months on the female unit at FDC Philadelphia as a pretrial detainee, Plaintiff was transported to Maryland for sentencing, and then returned to FDC Philadelphia awaiting designation.

56.     Once designated, despite the prior breach of duty to protect the safety of a female detainee by housing her with males, the recognition of that error and the medical confirmation that Plaintiff is a female, the Marshals had her transported to FCI Tallahassee in Florida as the only female with males, other females were transported separately.  Plaintiff was transported using various methods from FDC Philadelphia to FCI Tallahassee between March 18- March 26, 2024.  It is believed and therefore averred that that transport with males was deliberate.  Plaintiff was in constant fear during that long trip.

57.     As a result of these events and actions or failures to act, Plaintiff has suffered severe and ongoing physical and mental injuries in excess of one million dollars.

58.     Although some counseling has been offered to Plaintiff it is inadequate to address the harm suffered.

59.     The Federal Bureau of Prisons has recognized that sexual abuse of inmates is a significant problem within its institutions.

60.     BOP policy 5334.12 was in effect in February 2023, requiring federal prisons to adopt "zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and to provide guidelines to address…illegally sexually abusive behavior…" Defendant owes a duty of care to federal prisoners under 18 U.S.C. § 4042 which states in part that the Bureau of Prisons shall "provide for safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."

61.    The Federal Bureau of Prisons has recognized that sexual abuse of inmates is one of the most serious forms of misconduct.  The Federal Bureau of Prisons is well aware of the mandates of PREA.  FDC Philadelphia has had a number of claims by inmates for sexual abuse.

62.    Plaintiff filed and exhausted her administrative remedy requirements under the Prison Litigation Reform Act facility grievance system, pursuant to the Act and the case law while she was at FDC Philadelphia; cooperated in the PREA investigation by FDC Philadelphia, and also filed and exhausted her administrative remedy requirements to make a claim under the Federal Tort Claims Act. Those claims were denied by the Bureau of Prisons by letter dated May 23, 2025 and the US Marshals by letter dated July 15, 2025.

63.    Plaintiff has attempted to file several grievances at FMC Carswell for recent occurrences, similar in nature to some of those described herein, but has been refused forms. She has submitted her grievances on plain paper, but does not know if they have been accepted.

### COUNT I – NEGLIGENCE,
### Federal Tort Claims Act (28 U.S.C. §2671, et seq.)
### Against Defendant United States

64.    Plaintiff incorporates all proceeding averments the same as if set forth here at length.

65.    At all relevant times, employees of Defendant United States, that is, the employees of the Federal Bureau of Prisons (BOP), the United States Marshals Service, and other federal agencies or contractors acted within the scope of their employment where the Defendant, if a private person, would be liable to the claimant in accordance with the law and constitution of the Commonwealth of Pennsylvania.

66.    Defendant United States and its employees owed Plaintiff a duty of care to exercise reasonable care in screening, classifying, securing, supervising, and protecting

12

detainees, including compliance with the laws of the United States, mandatory PREA

requirements and adequate language-access procedures.

67.     Defendant, through its employees, breached these duties by:

a. Failing to properly classify and screen Plaintiff as an intersex female;
b. Failing to follow mandatory PREA intake and victim-risk protocols;
c. Failing to conduct any physical or medical exam to confirm Plaintiff's stated gender;
d. Failing to consult the Transgender Executive Council (TEC) as required;
e. Failing to staff intake and housing units with Spanish-speaking employees capable of understanding Plaintiff's statements;
f. Deliberately indifferent to Plaintiff's statements that she was female and unsafe and deliberately housed her with males based on bias;
g. Failing to respond to or investigate Plaintiff's cries for help over a 13-day period failing to protect her;
h. Failing to intervene in ongoing known or suspected sexual assaults;
i. Failing to provide required medical care after assaults;
j. Failing to preserve or review PREA-mandated video and documentation.

68.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff

sustained severe, permanent injuries including, but not limited to:

a. Repeated rape, sexual assault, and battery;
b. Head trauma, infection, and untreated wounds;
c. Endocrine and metabolic harm from improper medical care;
d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
e. Severe psychological trauma, PTSD, anxiety, depression; and
f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries as a result of the deliberate indifference to her medical needs are

permanent in nature and will require lifelong medical and psychological treatment. Plaintiff

seeks damages in excess of one million dollars and all compensatory damages available under

Pennsylvania law and the FTCA, including medical costs, mental-health care, pain and suffering,

emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for

compensatory damages in an amount in excess of one million dollars and for attorneys' fees and

other costs and expenses permitted by law.

**COUNT II – NEGLIGENT SUPERVISION,**
**Federal Tort Claims Act (28 U.S.C. §2671, et seq.)**
**Against Defendant United States**

69.    Plaintiff incorporates all proceeding averments the same as if set forth here at length.

70.    Defendant owed Plaintiff a duty of care while she was housed at FDC Philadelphia and to reasonably supervise its employees responsible for intake, classification, safety, PREA compliance, and medical response.

71.    Despite actual and constructive notice of Plaintiff's gender, Defendant's supervisors breached this duty by failing to supervise employees who:

    a. Ignored required PREA and BOP protocols and regulations;
    b. Failed to perform required gender confirmation and safety checks;
    c. Used discriminatory and derogatory language toward Plaintiff;
    d. Ignored Plaintiff's repeated pleas for help;
    e. Failed to intervene despite knowledge of ongoing sexual assault;
    f. Were inadequately trained in working with transgender or intersex detainees;
    g. Lacked adequate training or ability to communicate with Spanish-speaking detainees.

72.    Defendant's supervisor himself directed Plaintiff be placed with males.  That failure served no policy purpose and was outside his discretion.  He knew or should have known that inadequate supervision posed a foreseeable risk of harm to detainees, especially vulnerable detainees like Plaintiff.

73.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff sustained severe, permanent injuries including, but not limited to:

    a. Repeated rape, sexual assault, and battery;
    b. Head trauma, infection, and untreated wounds;
    c. Endocrine and metabolic harm from improper medical care;
    d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
    e. Severe psychological trauma, PTSD, anxiety, depression; and
    f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong medical and psychological treatment. Plaintiff seeks damages in excess of one million dollars and all compensatory damages available under Pennsylvania law and the FTCA, including medical costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for compensatory damages in an amount in excess of one million dollars and for attorneys' fees and other costs and expenses permitted by law.

## COUNT III – NEGLIGENT RETENTION
### Federal Tort Claims Act (28 U.S.C. §2671, et seq.)
### Against Defendant United States

74.    Plaintiff incorporates all proceeding averments the same as if set forth here at length.

75.    Defendant owed a duty of care to Plaintiff while she was housed at FDC Philadelphia and to retain only competent employees capable of performing their lawful duties in conformity with mandatory PREA and BOP policies including reporting assaults on detainees.

76.    Defendant breached this duty by retaining employees who:

a. Demonstrated bias toward vulnerable LGBTQ+ and intersex detainees;
b. Repeatedly violated mandatory PREA and BOP intake policies;
c. Ignored inmate reports of danger;
d. Failed to communicate with Spanish-speaking detainees;
e. Had a documented pattern of failing to respond to detainee safety concerns.

77.    Defendant knew or should have known that retaining these employees created a foreseeable risk of harm particularly to vulnerable detainees.

78.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff sustained severe, permanent injuries including, but not limited to:

a. Repeated rape, sexual assault, and battery;
b. Head trauma, infection, and untreated wounds;
c. Endocrine and metabolic harm from improper medical care;
d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
e. Severe psychological trauma, PTSD, anxiety, depression; and
f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong. medical and

psychological treatment. Plaintiff seeks damages in excess of one million dollars and all

compensatory damages available under Pennsylvania law and the FTCA, including medical

costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for

compensatory damages in an amount in excess of one million dollars and for attorneys' fees and

other costs and expenses permitted by law.

### COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (NIED), Federal Tort Claims Act (28 U.S.C. §2671, et seq.) Against Defendant United States

79.    Plaintiff incorporates all proceeding averments the same as if set forth here at

length.

80.    Pennsylvania law recognizes NIED where: (a) a defendant owes a duty of care;

(b) a plaintiff is placed in a zone of danger; or (c) the plaintiff suffers physical impact.

81.    Defendant's employees placed Plaintiff—an intersex female—into a male cell

with a violent male inmate, placing her directly in a zone of danger.

82.    Plaintiff suffered repeated physical impact, including rape, battery, head trauma,

and ongoing assault.

83.    Defendant's conduct caused severe emotional distress, fear, trauma, and

long-term psychological harm.

16

84.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff

sustained severe, permanent injuries including, but not limited to:

  a. Repeated rape, sexual assault, and battery;
  b. Head trauma, infection, and untreated wounds;
  c. Endocrine and metabolic harm from improper medical care;
  d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
  e. Severe psychological trauma, PTSD, anxiety, depression; and
  f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong medical and

psychological treatment. Plaintiff seeks damages in excess of one million dollars and all

compensatory damages available under Pennsylvania law and the FTCA, including medical

costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for

compensatory damages in an amount in excess of one million dollars and for attorneys' fees and

other costs and expenses permitted by law.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) Federal Tort Claims Act (28 U.S.C. §2671, et seq.) Against Defendant United States

85.     Plaintiff incorporates all proceeding averments the same as if set forth here at

length.

86.     Defendant's employees actions and omissions were intentional or reckless in

engaging in extreme and outrageous conduct for no legitimate purpose, including:

  a. Calling Plaintiff derogatory slurs such as "faggot" demonstrating bias against
       intersex individuals;
  b. Ignoring her statements in Spanish about her gender and safety;
  c. Intentionally placing her in a cell with a male on a male cell block;
  d. Ignoring 13 days of heer pleas for help in Spanish;
  e. Failing to intervene despite knowledge of ongoing sexual assaults.

87.     Such conduct was extreme, outrageous, psychologically abusive and beyond all bounds of decency.

88.     Defendant's actions intentionally or recklessly caused Plaintiff severe emotional distress.

89.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff sustained severe, permanent injuries including, but not limited to:

     a. Repeated rape, sexual assault, and battery;
     b. Head trauma, infection, and untreated wounds;
     c. Endocrine and metabolic harm from improper medical care;
     d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
     e. Severe psychological trauma, PTSD, anxiety, depression; and
     f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong medical and psychological treatment.

WHEREFORE, Plaintiff seeks damages in excess of one million dollars and all compensatory damages available under Pennsylvania law and the FTCA, including medical costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

### COUNT VI – NEGLIGENCE PER SE (PREA AND MANDATORY BOP REGULATIONS), Federal Tort Claims Act (28 U.S.C. §2671, et seq.) Against Defendant United States

90.     Plaintiff incorporates all proceeding averments the same as if set forth here at length.

91.     PREA (34 U.S.C. §30301 et seq.) and 28 C.F.R. pt. 115 impose mandatory duties designed to protect detainees from sexual assault and abuse.

92.     Plaintiff is within the class PREA is meant to protect detainees vulnerable to sexual victimization.

93.    Defendant' employees violated the following mandatory statutes and or regulations including failing to:

a. Conduct PREA screening;
b. Consider and confirm Plaintiff's gender identity and need for safety;
c. Refer her case to the TEC;
d. House her in conformity with safety mandates;
e. Report or intervene in sexual assault;
f. Provide language access;
g. Preserve PREA evidence or investigate.

94.    Plaintiff's injuries—rape, physical assault, psychological trauma—are precisely the harms PREA and BOP's own mandatory regulations were enacted to prevent.

95.    These statutory and regulatory violations constitute negligence per se.

96.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff sustained severe, permanent injuries including, but not limited to:

a. Repeated rape, sexual assault, and battery;
b. Head trauma, infection, and untreated wounds;
c. Endocrine and metabolic harm from improper medical care;
d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
e. Severe psychological trauma, PTSD, anxiety, depression; and
f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong medical and psychological treatment. Plaintiff seeks damages in excess of one million dollars and all compensatory damages available under Pennsylvania law and the FTCA, including medical costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for compensatory damages in an amount in excess of one million dollars and for attorneys' fees and other costs and expenses permitted by law.

## COUNT VII – FALSE IMPRISONMENT
## Federal Tort Claims Act (28 U.S.C. §2671, et seq.)
## Against Defendant United States

97.    Plaintiff incorporates all proceeding averments the same as if set forth here at length.  Under Pennsylvania law, false imprisonment is the unlawful detention of a person without legal justification.

98.    The elements are:  the detention of another person; and the unlawfulness of such detention.

99.    At all relevant times, employees of the Federal Bureau of Prisons ("BOP"), the United States Marshals Service ("USMS"), and other federal agencies were acting within the scope of their federal employment.

100.    Plaintiff was lawfully taken into federal custody, but was thereafter subjected to unlawful confinement when federal employees:

a. Wrongfully classified her as male despite her clear and repeated statements, in Spanish, that she is a female detainee;
b. Failed to conduct the mandatory PREA screening, safety assessment, intake medical evaluation, and gender-identification procedures required by PREA and BOP Program Statements;
c. Failed to make the mandatory referral to the Transgender Executive Council ("TEC");
d. Confined her to a male housing unit and forced her to share a cell with a violent male inmate;
e. Ignored her repeated pleas for help and her requests to be removed from the unlawful imprisonment;
f. Maintained her in a male cell block for approximately 13 days, despite knowledge or obvious indicators that such detention was unlawful, dangerous, and contrary to established regulations;
g. Continued to classify and transport her as a male even after medical staff confirmed she is female.

101.    Federal employees had no legal authority or justification to confine Plaintiff in a male housing unit, nor to disregard mandated procedures governing the placement and protection of intersex detainees.

102.    Placement of Plaintiff in a male cell with a violent inmate — in violation of mandatory PREA and BOP directives — constituted unlawful restraint without legal justification and therefore satisfies the Pennsylvania elements of false imprisonment.

103.    Plaintiff was aware of the confinement and repeatedly attempted to seek release or removal from the unlawful celling arrangement, but federal employees refused to act.

104.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff sustained severe, permanent injuries including, but not limited to:

    a. Repeated rape, sexual assault, and battery;
    b. Head trauma, infection, and untreated wounds;
    c. Endocrine and metabolic harm from improper medical care;
    d. Uncontrolled diabetes, migraines, and elevated cardiovascular risk;
    e. Severe psychological trauma, PTSD, anxiety, depression; and
    f. Loss of enjoyment of life and bodily integrity.

Certain of Plaintiff's injuries are permanent in nature and will require lifelong. medical and psychological treatment. Plaintiff seeks damages in excess of one million dollars and all compensatory damages available under Pennsylvania law and the FTCA, including medical costs, mental-health care, pain and suffering, emotional distress, disfigurement, and impairment.

WHEREFORE, Plaintiff demands judgment against Defendant United States for compensatory damages in an amount in excess of one million dollars and for attorneys' fees and other costs and expenses permitted by law.

Respectfully submitted,

_____          _____
Lynanne B. Wescott, Esquire          Margaret M. Grasso, Esquire
PA ID #52928                                  PA ID #75939
The Wescott Law Firm P.C.          Law Office of Margaret M. Grasso
1221 Locust Street, Suite 301          325 Chestnut Street, Suite 800
Philadelphia, PA   19107                  Philadelphia, PA   19106
Phone: 215-545-0324                      Phone: 215-280-5202
Lwescott@wescottlaw.net              Maggie@maggiegrassolaw.com

November 19, 2025