IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATY BERNAL-GUZMAN,

    *Plaintiff,*

 v.

UNITED STATES OF AMERICA,

    *Defendant.*

CIVIL ACTION
NO. 25-6541

**Pappert, J.**             **March 25, 2026**

<u>**MEMORANDUM**</u>

Katy Bernal-Guzman is an intersex female by birth and speaks only Spanish. She claims prison officials assigned her to a male cellblock and male cellmate at the Federal Detention Center in Philadelphia, even though she told Federal Bureau of Prisons correctional officers in Spanish that she was female. She contends her cellmate sexually assaulted and raped her until she was moved to the female cellblock thirteen days later. She sued the United States under the Federal Tort Claims Act, alleging negligence, negligent supervision and retention, negligent and intentional infliction of emotional distress, negligence *per se* and false imprisonment. The United States moves to dismiss her negligent supervision and retention, negligence *per se* and false imprisonment claims for lack of subject matter jurisdiction or, alternatively, failure to state a claim. The Court grants the motion.

I

Bernal-Guzman alleges federal officers arrested and detained her in Maryland before a government contractor moved her to FDC Philadelphia. (Compl. ¶¶ 7 & 14,

1

Dkt. No. 1.)  When she arrived at FDC Philadelphia, a correctional officer allegedly called her a "faggot" before ordering her to change clothes.  (*Id.* ¶ 16.)  Bernal-Guzman claims she received no medical exam and was not strip searched, instead a male supervisor "conducted a visual search" before assigning her to a male cellblock.  (*Id.* ¶¶ 17–19.)  She contends "[s]he told admitting [correctional officers] several times in Spanish that she was a female" but they ignored her.  (*Id.* ¶ 19.)

Bernal-Guzman alleges her cellmate threatened, sexually assaulted, raped and physically abused her for nearly two weeks "at all hours of the day and night," and that she sustained a head wound for which she received inadequate medical care.  (*Id.* ¶¶ 26, 32, 40, 42, 49.)  She claims she asked correctional officers for help in Spanish, but no one intervened until a bilingual inmate "called out for a [correctional officer] and explained in English what was happening," after which "a supervisor was summoned." (*Id.* ¶¶ 33–35.)  Medical staff examined Bernal-Guzman and determined she was female before transferring her to the female cellblock.  Prison officials later transferred her to FCI Tallahassee in Florida, then to Federal Medical Center Carswell in Fort Worth, Texas.  (*Id.* ¶¶ 36, 41, 49, 56.)

Bernal-Guzman filed her original complaint on November 25, 2024, (No. 24-6303, Dkt. Nos. 1 & 3), and a first amended complaint on May 1, 2025 in which she replaced John Doe defendants with named defendants, (No. 24-6303, Dkt. No. 20).  The United States moved to dismiss for various reasons, including that Bernal-Guzman failed to administratively exhaust her claims before filing suit.  (No. 24-6303, Dkt. No. 26.)  After hearing oral argument on the motion, (No. 24-6303, Dkt. No. 38), the Court granted it and dismissed Bernal-Guzman's First Amended Complaint without

prejudice, (No. 24-6303, Dkt. No. 39). Bernal-Guzman completed the administrative exhaustion process and filed this lawsuit as a new action against the United States alone, abandoning her personal-capacity claims against individual federal employees.

Bernal-Guzman brings each of her seven Counts against the United States under the Federal Tort Claims Act. She alleges negligence in Count I, negligent supervision and retention in Counts II and III, negligent and intentional infliction of emotional distress in Counts IV and V, negligence *per se* in Count VI and false imprisonment in Count VII. The United States moves for dismissal of Counts II, III, VI and VII, and answers Bernal-Guzman's complaint as to all other claims.

## II

### A

A court must dismiss any claims over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions invoking Rule 12(b)(1) fall into two categories: facial or factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The United States makes a facial attack, which "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [ ] requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

B

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded

factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

C

The Federal Tort Claims Act "operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. United States Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010); *see* 28 U.S.C. § 1346(b).  But the waiver does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).  If a plaintiff's claim falls within this "discretionary function" exception, the Court lacks subject matter jurisdiction to hear it. *See Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013).  Plaintiffs must establish the United States' waiver of sovereign immunity, and the Government must prove the discretionary function applies.  *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012).

"[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 592 U.S. 209, 21 (2021).  "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Brownback*, 592 U.S. at 218 n.8.

5

III

A

Bernal-Guzman alleges negligent supervision and retention, arguing the Bureau of Prisons failed (1) "to reasonably supervise its employees for intake, classification, safety, [Prison Rape Elimination Act] compliance, and medical response," (Compl. ¶¶ 70–72), and (2) to retain "only competent employees capable of performing their lawful duties in conformity with mandatory PREA and BOP policies including reporting assaults on detainees," (*Id.* ¶¶ 75–76).  The Government contends the discretionary function exception shields it from liability for supervision and management of its employees.  (Mot. to Dismiss at 18, Dkt. No. 7.)

The conduct at issue is the supervision and retention of prison employees.  *See Abunabba*, 676 F.3d at 332 ("As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue"); *see also United States v. Varig Airlines*, 467 U.S. 797, 813 (1984) ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.").  The conduct must satisfy a two-part test to fall within the exception.  *Xi v. Haugen*, 68 F.4th 824, 838 (3d Cir. 2023).  First, it must "involve an element of judgment or choice"—if it does not, the conduct is not discretionary and the exception does not apply.  *Id.* (quotation modified) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).  When "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" "the employee has no rightful option but to adhere to the directive" and cannot exercise judgment.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  If "a course of action"

is not prescribed by law and the conduct involves an element of judgment, the second part of the test asks whether the conduct is "of the kind that the discretionary function exception was designed to shield." *Id.*

Applying the two-part test, "[f]ederal appellate courts stand in agreement that decisions relating to the hiring, training, and supervision of employees are inherently a discretionary function." *Brown v. United States*, No. 17-1551, 2018 WL 741731, at *4 (E.D. Pa. Feb. 7, 2018) (collecting cases), *aff'd,* 823 F. App'x 97 (3d Cir. 2020); *see also* 15A Moore's Federal Practice § 105.26 (3d ed. 2026) ("Issues of employee hiring, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."). Bernal-Guzman has not identified a mandatory limitation on the Government's discretion to supervise and retain its employees, nor has she articulated why such conduct is not "the kind that the discretionary function exception was designed to shield."[1] *Berkovitz*, 486 U.S. at 536. The Government has shown the discretionary function exception shields it from liability for negligent supervision and retention. *See Clark v. Secretary of United States Navy*, 102 F.4th 658, 661 (3d Cir. 2024) (The United States is immune from suit when its agents commit alleged torts within the discretion accorded by their job function . . .").

B

Bernal-Guzman claims the United States was negligent *per se* for failure to adhere to the Prison Rape Elimination Act and Board of Prisons regulations. (Compl.

---

[1]    Bernal-Guzman argues the discretionary function does not apply because "admitting officers who housed plaintiff with males" violated the Eighth Amendment. (Resp. in Opp'n at 5–6, Dkt. No. 10.)  While it is true that "unconstitutional government conduct is *per se* outside the discretionary function exception," *Xi*, 68 F.4th at 824, Bernal-Guzman's claims are for negligent *supervision* and *retention*.  She has not "plausibly allege[d] a constitutional violation" with respect to that conduct. *Id.* at 840.

¶¶ 91–96.)  She claims she "was not subjected to a required PREA screen as having characteristics of an inmate or detainee with a higher than normal likelihood to be a victim of sexual assault."  (*Id.* ¶ 20.)

"[T]o be actionable under § 1346(b), a claim must allege, *inter alia*, that the United States would be liable to the claimant as a private person" under state law. *FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) (internal quotation marks and citations omitted); *see* 28 U.S.C. § 2674.  "It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs . . ." *Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997).  However, failure to adhere to a federal regulation may constitute negligence *per se* "if, under state law criteria, it may be considered the kind of . . . regulation violation of which is negligence *per se*." *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99–100 (3d Cir. 1986) (citations omitted).  "To serve as a proper basis for a negligence *per se* claim" under Pennsylvania law, "a statute must be so specific as to leave little question that a person or entity found in violation of it deviated from a reasonable standard of care." *Werner v. Horton*, No. 24-255, 2025 WL 2249355, at *5 (M.D. Pa. Aug. 6, 2025) (citations and internal quotation marks omitted).

The Government correctly observes that Bernal-Guzman's "complaint generally invokes PREA and BOP regulations, but does not identify with precision any specific statutory or regulatory requirements that allegedly provide the standard of care under Pennsylvania tort law."  (Mot. to Dismiss at 21.)  In her response, Bernal-Guzman cites a Pennsylvania Department of Corrections "Policy Statement" which "outlines the

Department's strategies for complying with the Prison Rape Elimination Act." (Resp. in Opp'n at 9); Pennsylvania Department of Corrections Policy Statement, DC-ADM 008, January 30, 2023. But she does not identify a *specific* federal statutory provision, regulation or state law which establishes a state law standard of care.

Bernal-Guzman also cites state criminal law forbidding, *inter alia*, an "employee or agent of the Department of Corrections" from "engag[ing] in sexual intercourse . . . with an inmate [or] detainee." 18 Pa. Stat. and Cons. Stat. Ann. § 3124.2. First of all, this statute is inapplicable to the facts alleged in her complaint. She alleges her cellmate assaulted her, not a prison employee. And second, Bernal-Guzman fails to explain how this Pennsylvania criminal statute—or any other—establishes a standard of care in the context of her factual allegations. She does not refer to any specific prohibition, and claims only that "Pennsylvania criminal law includes adopting [] § 3124.2 entitled Institutional Sexual Assault as a crime." (Resp. in Opp'n at 9.) Because she fails to identify a specific statute, violation of which would establish a deviation from the standard of care, her negligence *per se* claim fails. *See Youngers v. Mgmt. & Training Corp.*, No. 20-465, 2021 WL 5994878 (D.N.M. Apr. 19, 2021) ("[A]lleging a separate count of negligence per se in addition to garden variety negligence does not grant a plaintiff the ability to scattershot statutes in a response brief in an attempt to easily establish a breach of the duty of care.")

## C

Bernal-Guzman alleges she was falsely imprisoned because she was "lawfully taken into federal custody, but was thereafter subjected to unlawful confinement." (Compl. ¶ 100.) She claims "[f]ederal employees had no legal authority or justification

9

to confine [her] in a male housing unit, nor to disregard mandated procedures governing the placement and protection of intersex detainees." (*Id.* ¶ 101.)

The Pennsylvania tort of false imprisonment requires a plaintiff to allege (1) he or she was detained and (2) the detention was unlawful. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Bernal-Guzman concedes she was "lawfully taken into federal custody" and does not challenge her detention. (Compl. ¶ 100.) Her false imprisonment claim thus attacks the conditions of her confinement. *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process.*"); *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 682 (E.D. Pa. 2018) ("The Court is unaware of any cases in which a prisoner who was lawfully incarcerated was permitted to proceed with a false imprisonment claim under Pennsylvania law based on the conditions of his or her confinement."); *see also McGowan v. United States*, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015) ("[I]f the law recognizes the right to confine, there can be no tort of false imprisonment based on the conditions of confinement."), *aff'd*, 825 F.3d 118 (2d Cir. 2016).[2]

## IV

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004). Leave to amend should be "liberally granted" unless amendment would cause "substantial

---

[2]    In her response, Bernal-Guzman correctly argues that the law enforcement proviso in 28 U.S.C. § 2680(h) authorizes false imprisonment claims against law enforcement officers. (Resp. in Opp'n at 11–12.) This does not cure the fundamental problem with her claim: "[a] rightfully incarcerated individual cannot assert a false imprisonment claim based on . . . cell assignment or other conditions of confinement." *See Alston v. Little*, No. 22-183, 2023 WL 5943456, at *11 (W.D. Pa. May 15, 2023), *report and recommendation adopted*, 2023 WL 5299580 (W.D. Pa. Aug. 14, 2023).

prejudice" to the nonmoving party. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Absent substantial prejudice, amendment should be granted unless the plaintiff has exhibited bad faith or undue delay, or amendment would be futile. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Granting leave to amend the negligence *per se*, negligent supervision and retention claims would not cause substantial prejudice, and the Court cannot say at this point that amendment would be futile. Bernal-Guzman may amend those claims a final time if she can allege facts which could overcome the shortcomings identified in this Memorandum. Amendment of her false imprisonment claim would be futile, so the Court dismisses it with prejudice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

11