**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATY BERNAL-GUZMAN,<br>*Plaintiff,*<br>v.<br>UNITED STATES OF AMERICA,<br>*Defendant.* | CIVIL ACTION<br>NO. 25-6541 |

**Pappert, J.** **August 10, 2026**

**MEMORANDUM**

Katy Bernal-Guzman is an intersex female by birth and speaks only Spanish. She claims prison officials assigned her to a male cellblock with a male cellmate at the Federal Detention Center in Philadelphia, even though she told Federal Bureau of Prisons correctional officers in Spanish that she was female. She contends her cellmate sexually assaulted and raped her until she was moved to the female cellblock thirteen days later.

She sued the United States under the Federal Tort Claims Act, alleging negligence, negligent supervision and retention, negligent and intentional infliction of emotional distress, negligence *per se* and false imprisonment. The Court dismissed her false imprisonment claim with prejudice but granted leave to amend the negligent supervision and retention and negligence *per se* claims. Bernal-Guzman amended her complaint, and the United States moves to dismiss her negligent supervision and retention claims. The Court grants the motion.

# I

## A

A court must dismiss any claims over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions invoking Rule 12(b)(1) fall into two categories: facial or factual attacks. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The United States makes a facial attack, which "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [ ] requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

## B

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12. Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted." *Id.* 12(b)(6). Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010). The second

step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2.

C

The Federal Tort Claims Act "operates as a limited waiver of the United States's sovereign immunity." *White-Squire v. United States Postal Service*, 592 F.3d 453, 456 (3d Cir. 2010); *see* 28 U.S.C. § 1346(b). But the waiver does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). If a plaintiff's claim falls within the "discretionary function" exception, the Court lacks subject matter jurisdiction to hear it. *See Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013). Plaintiffs must establish

the United States' waiver of sovereign immunity, and the Government must prove the discretionary function applies. *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012).

II

The Court previously described Bernal-Guzman's factual allegations, the procedural history of this case and the law governing the discretionary function exception to the FTCA waiver of sovereign immunity. *See* (Mem. Op. Granting Mot. to Dismiss at 2–3, 6–7, Dkt. No. 12). It dismissed Bernal-Guzman's negligent supervision and retention claims because she did not "identify a mandatory limitation on the Government's discretion to supervise and retain its employees" nor articulate why "such conduct is not the kind that the discretionary function exception was designed to shield." (*Id.* at 7 (citation and internal quotation marks omitted).) She attempts to cure these deficiencies by augmenting her negligent supervision and retention claims with purported mandatory Prison Rape Elimination Act requirements and alleged violations of the Fifth, Eighth and Fourteenth Amendments. *See, e.g.*, (Am. Compl. ¶¶ 89 & 97, Dkt. No. 14); *see also* (Bernal-Guzman's Resp. in Opp'n at 3–7). She argues (1) PREA contains mandatory limitations on the Government's discretion to supervise and retain its employees and (2) the discretionary function exception does not apply to constitutional violations. (Bernal-Guzman's Resp. in Opp'n at 3, 10.)

A

The conduct at issue is the supervision and retention of prison employees. *See Abunabba*, 676 F.3d at 332 ("As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue");

*see also United States v. Varig Airlines*, 467 U.S. 797, 813 (1984) ("[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."). The conduct must satisfy a two-part test to fall within the exception. *Xi v. Haugen*, 68 F.4th 824, 838 (3d Cir. 2023). First, it must "involve[] an element of judgment or choice"—if it does not, the conduct is not discretionary and the exception does not apply. *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). When "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" "the employee has no rightful option but to adhere to the directive" and cannot exercise judgment. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If "a course of action" is not prescribed by law and the conduct involves an element of judgment, the second part of the test asks whether the conduct is "of the kind that the discretionary function exception was designed to shield." *Id.* Applying the two-part test, "[f]ederal appellate courts stand in agreement that decisions relating to the hiring, training, and supervision of employees are inherently a discretionary function." *Brown v. United States*, No. 17-1551, 2018 WL 741731, at *4 (E.D. Pa. Feb. 7, 2018) (collecting cases)*, aff'd,* 823 F. App'x 97 (3d Cir. 2020).

1

Bernal-Guzman purports to identify various "mandatory limitations on [the Government's] discretion to supervise and retain its employees." (Bernal-Guzman's Resp. in Opp'n at 3–7.) But the regulations she relies upon largely govern the underlying conduct of individual employees, not their supervision or retention. For example, she cites regulations pertaining to cross-gender pat downs, 28 C.F.R. § 115.15,

how to interact with inmates who are not proficient in English, § 115.16, intake screening, §§ 115.41, 115.42, 115.141, incident reporting, §§ 115.51 & 115.113 and post-incident reviews, § 115.86. None of these regulations limit the Government's discretion to supervise or retain its employees. *See, e.g.*, § 115.15 (preserving the Government's discretion to "train security staff in *how to conduct* . . . searches of transgender and intersex inmates, *in a professional and respectful manner* . . . *consistent with security needs*.").

Bernal-Guzman cites several regulations that refer directly to supervision and retention. *See* 28 C.F.R. §§ 115.13 ("Supervision and monitoring"), 115.113 (same, as to temporary confinement facilities known as "lockups"), 115.176 ("Disciplinary sanctions for staff"). The pertinent provisions of each regulation are as follows:

> § 115.13 Supervision and monitoring.
>
> (a) The agency shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, facilities shall take into consideration: [various enumerated factors].
>
> . . .
>
> (d) Each agency operating a facility shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment.
>
> § 115.113 Supervision and monitoring [at "lockups"].
>
> (a) For each lockup, the agency shall develop and document a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect detainees against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, agencies shall take into consideration; [various enumerated factors].

> § 115.176 Disciplinary sanctions for staff.
>
> (a) Staff shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies.
>
> . . .
>
> (c) Disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) shall be commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories.

As an initial matter, Bernal-Guzman's suggestion that the regulations' inclusion of the word "shall" limits the Government's discretion finds no support in the law. *See Cestonaro v. United States*, 211 F.3d 749, 755 (3d Cir. 2000) ("The inclusion of 'shall' . . . does not necessarily destroy the [agency's] discretion."). Indeed, two of the regulations require consideration of various enumerated factors, *see* 28 C.F.R. §§ 115.13(a) & 115.113(a), which implicitly preserves the Government's discretion, *see Cestonaro*, 211 F.3d at 755 ("While the language of these guidelines often includes the word shall, it is clear that the decision to use one method as opposed to another is based upon numerous factors . . ." (quoting *Brackin v. United States*, 913 F.2d 858, 860 (11th Cir. 1990)). Further, the fundamental mandates of §§ 115.13 and 115.113 are to "develop" and "document" a staffing plan, leaving to the agency broad discretion to decide how to do so. The same discretion applies to § 115.176, which broadly permits employee sanctions "up to and including termination." None of the regulations are "the kind of express mandate that precludes coverage by the discretionary function exception." *See Cestonaro*, 211 F.3d at 754.

Finally, Bernal-Guzman cites § 115.11 which requires that "[a]n agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse . . .

outlining the agency's approach to preventing, detecting, and responding to such conduct." This overarching policy is a "general provision that prescribe[s] certain procedures [the Government] must follow" and does not dilute its discretion with respect to supervision or retention. *See Brown*, 2018 WL 741731, at *5; *see also Franklin v. Franklin Cnty., Kentucky*, 115 F.4th 461, 479 (6th Cir. 2024) ("PREA does not provide a specific, mandatory course of action for how agencies supervise . . . their employees. The PREA regulations concerning employee discipline provide agencies with discretion." (quotation omitted)); *Peralta v. United States*, No. 19-08912, 2020 WL 13210654, at *3 (C.D. Cal. Oct. 23, 2020) (same).

2

Bernal-Guzman argues "[b]ecause these PREA mandates are mandatory, the second step—to evaluate whether defendant's discretionary actions are policy driven—is unnecessary." (Resp. in Opp'n at 8.) As explained, the PREA regulations she cites are not mandatory as to supervision and retention of employees. So the Court "must determine 'whether that judgment [exercised by the Government] is of the kind that the discretionary function exception was designed to shield.'" *Merando v. United States*, 517 F.3d 160, 165 (3d Cir. 2008) (quoting *Gaubert*, 499 U.S. at 322–23.) Because "the [discretionary function] exception protects only governmental actions and decisions based on considerations of public policy," *Berkovitz*, 486 U.S. at 537, the "focus of the inquiry is . . . on the nature of the actions taken and on whether they are susceptible to policy analysis," *Gaubert*, 499 U.S. at 325.

"Government decision regarding hiring, training, and supervision . . . involve an element of choice that is subject to policy analysis, namely, 'how best to use its limited

financial and human resources.'" *Coen v. United States*, No. 21-4636, 2022 WL 1291503, at *4 (E.D. Pa. Apr. 29, 2022) (quoting *Merando*, 517 F.3d at 172). Courts do not "second-guess the political, social, and economic judgments" of the Government with respect to the supervision and retention of prison employees. *See Varig Airlines*, 467 U.S. at 820. These are "quintessential [] policy-based discretionary decisions." *See Woods v. United States*, No. 07-593, 2007 WL 3243852, at *5 (D.N.J. Nov. 1, 2007); *see also Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); *Matsko v. United States*, 372 F.3d 556, 558 n.6 (3d Cir. 2004) (citing *Tonelli* approvingly in dicta).

B

Bernal-Guzman next argues the discretionary function exception does not apply because government officials possess no discretion to violate the Constitution. (Resp. in Opp'n at 10.) To that end, she purports to allege violations of the Fifth, Eighth and Fourteenth Amendments relating to the Government's supervision and retention of its prison employees. (*Id.* at 13); (Am. Compl. ¶¶ 27, 89–91, 94, 95 & 97.) But Bernal-Guzman has not cured the infirmity the Court previously identified: she fails to plausibly allege a constitutional violation with respect to negligent supervision and retention. *See* (Mem. Op. Granting Mot. to Dismiss at 7 n.1).

The Third Circuit Court of Appeals joined several other circuit courts in finding "unconstitutional government conduct is *per se* outside the discretionary function exception" because such "conduct cannot be discretionary if it violates the Constitution." *Xi*, 68 F.4th at 838, 839. The "constitutional-violation carveout" is

effectively a third step in the *Gaubert* two-part discretionary function analysis described *supra*. *See Rinaldi v. United States,* No. 21-2298, 2024 WL 4579246 (3d Cir. Oct. 25, 2024), *cert. denied*, 146 S. Ct. 157 (2025); *see also Ryan v. Robinson*, No. CV 22-1175, 2026 WL 555453, at *10 (D.N.J. Feb. 27, 2026) ("Even if the government can show that both parts of the discretionary function exception apply, there is an additional step."). As one illustration, plausible allegations of deliberate indifference in violation of the Eighth Amendment may fall outside the discretionary function exception. *See, e.g.*, *Woodruff v. United States*, No. 16-1884, 2020 WL 3297233, at *8–9 (D.D.C. June 18, 2020).

Bernal-Guzman doesn't allege any supervisory action that violated her constitutional rights. She points instead to allegations that are conclusory or have nothing to do with supervision or retention. For example, she conclusorily alleges "supervisors . . . fail[ed] to supervise employees" and "[b]y these actions or inactions violated" her constitutional rights. (Am. Compl. ¶ 89.) She contends "supervisors . . . witnessed abusive activity" and "fail[ed] to discipline it," which conduct could not, as a matter of temporal logic, have precipitated the harm she claims befell her. (*Id.* ¶ 94.) She alleges a "supervisor himself directed [her] to be placed with males," which, taken as true, goes to the individual supervisor's direct negligence, not the Government's negligent supervision. (*Id.* ¶ 90.) The same goes for allegations related to placing her in the cell where the sexual assault took place—these describe direct, not supervisory, negligence. (*Id.* ¶¶ 27, 95, 97.) Because Bernal-Guzman has not plausibly alleged unconstitutional supervisory conduct, her claims of negligent supervision and retention remain within the discretionary function exception. *See Briscoe v. United States*, 268 F.

Supp. 3d 1, 12 (D.D.C. 2017) ("[P]laintiffs do not allege that the FBI's supervision itself was unconstitutional. So, even if plaintiffs plausibly allege that [the FBI agent's] actions violated their constitutional rights, they fail to allege constitutional violations by his supervisors.").

Finally, Bernal-Guzman relies extensively on *Martin v. United States*, 145 S. Ct. 1689 (2025) and *Millbrook v. United States*, 569 U.S. 50 (2013). (Resp. in Opp'n at 11–15.) Both cases address the law enforcement proviso, which permits plaintiffs to sue the United States for intentional torts including "assault, battery, false imprisonment, false arrest, abuse of process, [and] malicious prosecution" when they are committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h); *Martin*, 145 S. Ct. at 1698 (explaining "Subsection (h)'s intentional-tort exception excludes from the FTCA's sovereign-immunity waiver claims for torts like 'assault, battery, false imprisonment, [and] false arrest.' The proviso then undoes that assertion of sovereign immunity for some of those same torts when committed by 'investigative or law enforcement officers.'").

*Martin* held the proviso overrides the intentional tort exception, not the discretionary function exception. *Id.* at 1696–1700. *Millbrook* held the proviso is not limited to "investigative or law enforcement activity." 569 U.S. at 57. The two cases are inapposite; negligent supervision and retention are not intentional torts and have nothing to do with the law enforcement proviso.

III

Courts should not grant leave to amend if it would be futile. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Amendment is futile when "the complaint, as

amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

Granting leave to amend the negligent supervision and retention claims would be futile, so Bernal-Guzman may not amend her complaint again. The Court dismisses the claims without prejudice for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
Gerald J. Pappert, J.